# In the United States Court of Federal Claims

No. 20-1071
(Filed: 16 June 2021)
NOT FOR PUBLICATION

```
*****************************************
DONALD LEWIS DAVIS,                     *
                                        *
              Plaintiff,                *
                                        *
v.                                      *
                                        *
THE UNITED STATES,                      *
                                        *
              Defendant.                *
                                        *
*****************************************
```

## ORDER

    On 17 August 2020, *pro se* plaintiff Donald Lewis Davis filed a complaint requesting the government refund money in a federal prisoner account and stating, "[t]his Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1321 and 1322." Petition Under 28 U.S.C. § 1491 for the Refund of Money Erroneously Received at 1, ECF No. 1. Mr. Davis filed a motion for leave to file in written print on the same day. *See* Mot. for Leave to File All Papers in This Action in Written Print ("Mot. for Leave to File"), ECF No. 2. Mr. Davis filed an application to proceed *in forma pauperis* ("IFP") and a form for prisoner authorization of payment of filing fees on 7 October 2020. *See* Application to Proceed *In Forma Pauperis*, ECF No. 8; Prisoner Authorization, ECF No. 8-1. On 16 October 2020, the government filed a motion to dismiss the complaint pursuant to RCFC 12(b)(1), alleging §§ 1321 and 1322 "are appropriations statutes regarding disbursement of classified trust funds and refunds of amounts erroneously deposited in those trust funds that do not provide a basis to invoke this Court's jurisdiction." Def.'s Mot. to Dismiss at 3, ECF No. 9. On 10 November 2020, Mr. Davis filed an amended complaint asserting "funds [were] illegally withdrawn from [Mr. Davis's] Prisoner Trust Fund Account." *See* Am. Compl. (RCFC 15(a)(1)(B)) ("Am. Compl.") at 7, ECF No. 10. The government again moved to dismiss Mr. Davis's claims pursuant to RCFC 12(b)(1). *See* Def.'s Mot. to Dismiss Pl.'s Am. Compl. ("Gov't MTD"), ECF No. 13. Mr. Davis's untimely response was accepted by leave of the Court on 29 January 2021. *See* Order, ECF No. 14; Pl.'s Reply to Def.'s 12-8-20 Mot. to Dismiss ("Pl.'s Resp."), ECF No. 15. The government filed a reply on 16 February 2021. See Def.'s Reply in Supp. of its Mot. to Dismiss Pl.'s Am. Compl. ("Gov't Reply"), ECF No. 16.

    Mr. Davis's amended complaint alleges, "the United States Treasury illegally demanded the withdrawal of $400.00 from the Prisoner Trust Fund Account that the United States Bureau of Prisons ('USBOP') has created for [Mr. Davis's] use." Am. Compl. at 2. Mr. Davis's amended complaint states, "[t]his claim is founded upon a regulation of the USBOP, USBOP

Program Statement No. 4500.12, titled, Trust Fund/Deposit Manual; a regulation of the United States Treasury, the United States Treasury Financial Manual; 32 U.S.C. § 3702(c); and/or, an implied contract with the United States." *Id.*  Mr. Davis argues under the BOP Trust Fund/Deposit Manual, "any monies deposited into Prisoner Trust Fund accounts are to be held in trust by the USBOP, . . . [and] '*no funds* are withdrawn from an inmate's account without his/her prior consent.'"  *Id.* at 4 (quoting Fed. Bureau of Prisons, U.S. Dep't of Just., Program Statement No. 4500.12, Trust Fund/Deposit Manual 10.1 (2018) ("Trust Fund/Deposit Manual")).  Mr. Davis additionally argues the "regulation of the USBOP states[] that 'inmate funds are deposited to the U.S. Treasury per the U.S. Treasury Financial Manual, the Program Statement Accounting Management Manual, and this Manual.'"  *Id.* at 5 (quoting Trust Fund/Deposit Manual at 9.1)). Mr. Davis also quotes the Trust Fund/Deposit Manual's extensive discussion of the history of prisoner trust funds:

> In 1930, Department of Justice Circular No. 2126, titled Rules Governing the Control of Prisoner's Funds at the Several Penal and Correctional Institutions (August 1, 1930), authorized and established a Commissary at each institution. The Commissary was created to provide a bank-type account for inmate monies and "for the procurement of articles not regularly issued as part of the institution administration."  Circular 2244, Rules Governing the Control of Prisoners Funds at Several Penal and Correctional Institutions (January 1, 1932), superseded Circular No. 2126 and *established [sic] U.S. Treasury accounts for the "Prisoner [sic] Trust Fund"* and the "Commissary and Welfare Funds."
>
> The existence and operation of the prison Commissaries was approved by Congress in 1932 in the Department of Justice's 1933 appropriation bill.  In 1934, Congress designated the "funds of federal prisoners" and "Commissary funds" as "trust funds" (31 U.S.C. 1321). *Monies accruing to these funds were appropriated and disbursed in compliance with the terms of the trust*.

*Id.* at 2–3 (quoting Trust Fund/Deposit Manual at 2.1) (emphasis in Mr. Davis's Amended Complaint).

The government notes, "Mr. Davis identifies 31 U.S.C. § 1321 as providing the basis for this Court's jurisdiction over his claim."  Gov't MTD at 3 (citing Am. Compl. at 3).  The government cites Judge Kaplan's decision in *Spengler* for the proposition, "this Court has previously determined that 31 U.S.C. §§ 1321 is not a 'money-mandating source of law' sufficient to invoke the Court's jurisdiction, and it should find the same here."  *Id.* (citing *Spengler v. United States*, 127 Fed. Cl. 597, 603 (2016), *aff'd,* 688 F. App'x 917 (Fed. Cir. 2017)).  The government provides an extensive discussion of the legal history of the Commissary and Welfare Fund.  *See id.* at 3–5.  The government also argues in its reply, "[w]hile the claims of the plaintiff in *Spengler* related to the Commissary and Welfare Fund, and not to the Prisoner Trust Fund like Mr. Davis's claim, the Court's holding is equally applicable here" because "[b]oth the Commissary and Welfare Fund and the Prisoners Trust Fund are classified as trust funds pursuant to 31 U.S.C. § 1321(a)(21)-(22)."  Gov't Reply at 2.  Mr. Davis notes, however, this court's decision in *Spengler* is distinguishable because he "is not claiming to be a beneficiary of the USBOP Commissary Fund."  *Id.* at 4–5.

Judge Kaplan explained in *Spengler* this court previously in *Salter* found it had subject matter jurisdiction over a claim under the Prisoners Trust Fund and credited "as 'reasonable' the argument that the creation of a trust account to hold the funds of an inmate statutorily recognized by 31 U.S.C. § 1321(a)(21) and pursuant to Circular No. 2244 imposes fiduciary responsibilities on the BOP." *Spengler*, 127 Fed. Cl. at 602 (citing *Salter v. United States*, 119 Fed. Cl. 359, 364 (2014) (Wolski, J.) (internal brackets removed). The court in *Spengler* agreed with the court in *Salter* that Prisoners Trust Fund accounts are distinct from Commissary Fund accounts: "As contrasted with the monies held in the Prisoner's Trust Fund, the monies in the Commissary Fund do not in any sense belong to the prisoners; in fact, Circular No. 2244 expressly denies inmates any entitlement to the earnings of the Commissary." *Id.* (citing *Salter*, 119 Fed. Cl. at 364). While the "Commissary and Welfare Fund consists of revenues generated by the sale of goods at prison commissaries," the "Prisoners Trust Fund, on the other hand, consists of personal monies prisoners earn working in the prison and money that is sent to them by family, friends, or other sources while they are incarcerated." *Id.* at 601.

Judge Wolski in *Salter* denied the government's motion to dismiss a prisoner's claim arguing the USBOP breached its fiduciary duty as trustee of the Prisoners Trust Fund account. *Salter v. United States*, No. 10-318C, 2011 WL 6890645, at *2 (Fed. Cl. Dec. 29, 2011) (Wolski, J.) The court in *Salter* found: "31 U.S.C. § 1321 and Circular No. 2244 impose fiduciary obligations upon the BOP concerning Prisoners Trust Fund accounts, sufficient to support jurisdiction." *Id.*

*Pro se* parties are granted greater leeway than litigants represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (noting *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers"). The Court notes Mr. Davis's briefing thus far has been well researched and organized. While the government argued Judge Kaplan's decision in *Spengler* directly supports the government's motion to dismiss for lack of subject matter jurisdiction in this case, *Spengler* appears to support the opposite proposition. *See Spengler*, 127 Fed. Cl. at 602 (citing *Salter*, 119 Fed. Cl. at 364) ("As contrasted with the monies held in the Prisoner's Trust Fund, the monies in the Commissary Fund do not in any sense belong to the prisoners; in fact, Circular No. 2244 expressly denies inmates any entitlement to the earnings of the Commissary."). Additionally, neither party discussed the applicability of Judge Wolski's decision in *Salter*, which Judge Kaplan's decision in *Spengler* recognizes to be the relevant case discussing 31 U.S.C. § 1321(a)(21), rather than 31 U.S.C. § 1321(a)(22), which *Spengler* discusses. Rather, the government asserted, "[t]here is no reason to believe that when Congress designated the Commissary and Prisoner Trust Funds as trusts for this specialized purpose, it also intended to subject the United States to liability for money damages for breach of fiduciary obligations." Gov't MTD at 5 (citing *Spengler*, 127 Fed. Cl. at 601–02; *Fiduciary Obligations Regarding Bureau of Prisons Commissary Fund*, 19 Op. O.L.C. 127 (1995) ("19 Op. O.L.C. 127")).

The government's assertion diverges from the text of the OLC opinion it cites:

Although we have established that 31 U.S.C. §1321 and the rules set forth in Circular No. 2244 pertaining to the Commissary Fund do not impose fiduciary

>obligations on the BOP with respect to the Commissary Fund, we believe that 31 U.S.C. §1321 and the rules set forth in Circular No. 2244 pertaining to the Prisoners' Trust Fund do impose fiduciary obligations on the BOP with respect to moneys contained in inmates' Prisoners' Trust Fund accounts. We base our conclusions on distinctions between the two "trust funds."

19 Op. O.L.C. 127; *see Salter*, No. 10-318C, 2011 WL 6890645, at *1 (quoting 19 Op. O.L.C. 127) ("31 U.S.C. § 1321 and the rules set forth in Circular No. 2244 pertaining to the Prisoners Trust Fund do impose fiduciary obligations on the BOP with respect to moneys contained in inmates Prisoners Trust Fund accounts"). The government's motion to dismiss notes this court in *Spengler* cites 19 Op. O.L.C. 127, but the government does not engage with the fact that the Department of Justice Office of Legal Counsel's belief as stated in 19 Op. O.L.C. 127 appears to be contrary to the government's assertion in its motion to dismiss. *See* Gov't MTD at 4–5.

Accordingly, the Court's resolution of the threshold jurisdictional issue in this case would benefit from supplemental briefing addressing the application of the following: (1) *Salter v. United States*, No. 10-318C, 2011 WL 6890645 (Fed. Cl. Dec. 29, 2011); (2) *Salter v. United States*, 119 Fed. Cl. 359 (2014); and (3) *Fiduciary Obligations Regarding Bureau of Prisons Commissary Fund*, 19 Op. O.L.C. 127 (1995). The briefs shall be limited to the jurisdictional issue discussed above. As Mr. Davis is currently incarcerated, writing his briefs by hand, and filing through the U.S. Postal Service, the Court establishes the following schedule for supplemental briefing to allow Mr. Davis reasonable time to respond:

| Event | Date |
|---|---|
| The government files its opening supplemental brief in support of its motion to dismiss | 16 July 2021 |
| Mr. Davis files his response supplemental brief on the government's motion to dismiss | 30 August 2021 |
| The government files its reply supplemental brief in support of its motion to dismiss | 13 September 2021 |

The government's opening brief and Mr. Davis's response shall be no longer than 10 pages. The government's reply shall be no longer than 5 pages.

Mr. Davis explains he filed his motion for leave to file in written print, dated 12 August 2020, because "[d]ue to the Covid-19 global pandemic, the institution where the Petitioner is currently confined is on a modified lockdown status, and, therefore, the Petitioner has no access to a typewriter." Mot. for Leave to File at 1–2. The government filed no opposition to plaintiff's motion. Accordingly, Mr. Davis's motion for leave to file in written print is **GRANTED**.

Mr. Davis checked a box in his application to proceed IFP stating: "I have attached a 'Prisoner Authorization form' authorizing the Facility where I am incarcerated to deduct the filing fee from my account . . . ." Application to Proceed *In Forma Pauperis* at 1. The prisoner authorization form for payment of filing fees acknowledges: "if I am granted IFP status, the

$350 filing fee will be deducted from my prison account . . . .  I authorize the agency holding me in custody to calculate the amounts specified by 28 U.S.C. § 1915(b), deduct those amounts from my prison trust fund, and disburse those amounts to the court." Prisoner Authorization at 1. Accordingly, Mr. Davis's application to proceed is **GRANTED**.

The government's first motion to dismiss pursuant to RCFC 12(b)(1) was rendered moot by Mr. Davis's filing of an amended complaint and the government's filing of a second motion to dismiss pursuant to RCFC 12(b)(1).  Accordingly, the government's first motion to dismiss, ECF No. 9, is **DENIED AS MOOT**.  The Court's consideration of the government's second motion to dismiss is hereby **STAYED** until supplemental briefing concludes.

**IT IS SO ORDERED.**

s/ Ryan T. Holte  
RYAN T. HOLTE  
Judge