# In the United States Court of Federal Claims

No. 20-1071
(Filed:  20 May 2022)
NOT FOR PUBLICATION

```
*****************************************
DONALD LEWIS DAVIS,                      *
                                         *
                Plaintiff,               *
                                         *
v.                                       *
                                         *
THE UNITED STATES,                       *
                                         *
                Defendant.               *
                                         *
*****************************************
```

*Donald Lewis Davis*, *pro se*, of Fairton, New Jersey.

*Sonia W. Murphy*, Trial Attorney, with whom were *Lisa L. Donahue*, Assistant Director, *Martin F. Hockey, Jr.*, Acting Director, *Brian M. Boynton*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, all of Washington, D.C., for defendant.

## OPINION AND ORDER

**HOLTE**, **Judge**.

*Pro se* plaintiff Donald Lewis Davis filed a complaint alleging illegal exaction and a violation of due process against the United States Department of the Treasury.  The government moves to dismiss plaintiff's claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims.  For the following reasons, the Court: (1) grants in part and denies in part the government's motion to dismiss; and (2) denies as moot plaintiff's motion for leave to obtain a copy of cases to respond to the Court's order of supplemental briefing.

## I.  Background

### A.  Factual History

The Court draws the following facts from plaintiff's filings, "accept[ing] all well-pleaded factual allegations as true and draw[ing] all reasonable inferences in [the nonmovant's] favor." *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000); *see also Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir. 1989) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)) ("In passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject

matter or for failure to state a cause of action, unchallenged allegations of the complaint should be construed favorably to the pleader.").

Plaintiff is an inmate of a federal correctional institution in Fairton, New Jersey.  *See* Pet. Under 28 U.S.C. § 1491 for the Refund of Money Erroneously Received ("Compl.") at 2, ECF No. 1; Appl. to Proceed *In Forma Pauperis* ("Pl.'s IFP Appl."), ECF No. 8; Am. Compl. (RCFC 15(a)(1)(B)) ("Am. Compl.") at 7, ECF No. 10.  On 21 December 2019 and 20 January 2020, plaintiff requested the United States Bureau of Prisons ("USBOP") withdraw $400.00 "from [his] Prisoner Trust Fund Account, to be sent to" Sheliqua Fuller.  Am. Compl. at 8.  After neither "United States Treasury check for . . . $400.00 . . . reached the aforesaid destination[,]" plaintiff asked "the USBOP to cancel" both checks.  *Id.* at 8–9.  Following plaintiff's cancellation request, both $400.00 disbursements were "returned to [plaintiff's] Prisoner Trust Fund Account on [10 June 2020]."  *Id.* at 9.

On 16 June 2020 and 23 June 2020, plaintiff "again requested the USBOP to withdraw $400.00 from [his] Prisoner Trust Fund Account, to be sent to Sheliqua Fuller at a different address."  *Id.*  "Of the two $400.00 requests that w[ere] withdrawn from [his] Prisoner Trust Fund Account," plaintiff states "only one . . . check for $400.00 [was] received by Sheliqua Fuller."  *Id.* at 12 n.3.  Plaintiff contends he "was notified that Sheliqua Fuller received a United States Treasury check for $400.00 . . . , but when she cashed it, the United States Treasury viewed it as a payment over one of the [21 December 2019 and 20 January 2020] cancell[ed] checks]."  *Id.* at 9–10 (footnote omitted).  Plaintiff contends the "payment over one of the [21 December 2019 and 20 January 2020] cancellations" resulted in an additional "$400.00 [being] illegally withdrawn [on 28 July 2020] from [his] Prisoner Trust Fund Account into the pockets of the United States Treasury"—constituting an "illegal exaction."  Am. Compl. at 10.  When plaintiff "presented this error to the prison officials[,] . . . they said that Sheliqua Fuller cashed one of the . . . checks that" plaintiff cancelled, "without providing [p]laintiff Davis any proof."  *Id.*  As remedy, plaintiff seeks "to have the United States Treasury notify the USBOP of its said error, and to have the $400.00 that was illegally withdrawn from [his] Prisoner Trust Fund Account . . . returned to [his] Prisoner Trust Fund Account."  *Id.*

## B.  Procedural History

Plaintiff filed his initial request for relief on 17 August 2020, and on the same day, he filed a motion for leave to file all papers in written print.  *See* Compl.; Mot. for Leave to File All Papers in This Action in Written Print, ECF No. 2.  Plaintiff later filed an application to proceed *In Forma Pauperis* and a form for prisoner authorization of payment of filing fees.  *See* Pl.'s IFP Appl.  The government then filed its initial motion to dismiss.  *See* Def.'s Mot. to Dismiss, ECF No. 9.  On 10 November 2020, plaintiff filed an amended complaint, to which the government responded by filing its most recent motion to dismiss on 8 December 2020.  *See* Am. Compl.; Def.'s Mot. to Dismiss Pl.'s Am. Compl. ("Def.'s MTD"), ECF No. 13.  Plaintiff then responded to the government's motion to dismiss and the government replied in support of its position.  *See* Pl.'s Reply to Def.'s 12-8-20 Mot. to Dismiss ("Pl.'s MTD Resp."), ECF No. 15; Def.'s Reply in Supp. of its Mot. to Dismiss Pl.'s Am. Compl. ("Def.'s MTD Reply"), ECF No. 16.

On 16 June 2021, the Court issued an Order:  (1) ordering supplemental briefing; (2) denying as moot the government's first motion to dismiss; and (3) staying the government's second motion to dismiss until the conclusion of supplemental briefing.  *See* Order, ECF No. 17. Plaintiff responded by filing a motion for leave to obtain a copy of cases to address the Court's order of supplemental briefing, and the government responded to plaintiff's request by providing copies of the cases.  *See* Pl. Davis' Mot. for Leave to Obtain a Copy of the Cases that this Court Ordered Him to Address ("Pl.'s Mot. for Cases"), ECF No. 18; Def.'s Resp. to Pl.'s Mot. for Leave to Obtain a Copy of the Cases that the Court Ordered Him to Address ("Def.'s Resp. Supplying Cases"), ECF No. 19.[1]  The government filed its supplemental brief on 21 July 2021, and plaintiff responded on 31 August 2021.  *See* Def.'s Suppl. Briefing Pursuant to the Court's Order of June 16, 2021 (ECF No. 17) ("Def.'s Suppl. Br."), ECF No. 22; Pl.'s Suppl. Resp. Br., ECF No. 27.  The government replied to plaintiff's response on 29 September 2021.  *See* Def.'s Reply to Pl.'s Suppl. Resp. Br., ECF No. 28.

## II.  Parties' Arguments on the Government's Motion to Dismiss

### A.  The Government's Arguments

The government moves to dismiss plaintiff's amended complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC").  *See* Def.'s MTD.  The government argues the Court lacks subject matter jurisdiction because plaintiff's "claim seeking notification of the USBOP's alleged 'mistake' and a return of the four hundred dollars to his commissary [sic] account does not fall within the Court's limited Tucker Act jurisdiction."  *Id.* at 2.  "In order to assert a valid illegal exaction claim," the government asserts, "a plaintiff must show:  (1) money was taken by the government; and (2) the exaction violated a provision of the Constitution, a statute, or a regulation."  *Id.* at 3 (citing *Piszel v. United States*, 121 Fed. Cl. 793, 799 (2015), *aff'd*, 833 F.3d 1366 (Fed. Cir. 2016)).  To fulfill subject matter jurisdiction, the government contends:  "[A] claimant must demonstrate that the statute or provision causing the exaction itself provides, either expressly or by necessary implication, that the remedy for its violation entails a return of money unlawfully exacted."  *Id.* (quoting *Wagstaff v. United States*, 105 Fed. Cl. 99, 111 (2012)).

In its motion to dismiss, the government notes:  "[Plaintiff] identifies 31 U.S.C. § 1321 as providing the basis for this Court's jurisdiction over his claim."  *Id.* (citing Am. Compl. at 3). The government argues, "this [c]ourt has previously determined [in *Spengler v. United States*] that 31 U.S.C. §§ [sic] 1321 is not a 'money-mandating source of law' sufficient to invoke the [c]ourt's jurisdiction, and it should find the same here."  *Id.* (citing *Spengler v. United States*, 127 Fed. Cl. 597, 603 (2016), *aff'd*, 688 F. App'x 917 (Fed. Cir. 2017)).  The government further

---

[1] In its 16 June 2021 Order, the Court ordered "supplemental briefing addressing the application of the following: (1) *Salter v. United States*, No. 10-318C, 2011 WL 6890645 (Fed. Cl. Dec. 29, 2011); (2) *Salter v. United States* [("*Salter II*")], 119 Fed. Cl. 359 (2014); and (3) *Fiduciary Obligations Regarding Bureau of Prisons Commissary Fund*, 19 Op. O.L.C. 127 (1995)."  Order at 4.  Plaintiff subsequently filed a motion "seeking to obtain a copy of" the supplemental briefing cases, because "[he could not] access [the cases] on the Electronic Law Library available to the prison population."  Pl.'s Mot. for Cases at 2.  The government "d[id] not object to plaintiff's request, and . . . attached the cases requested by Mr. Davis to [its] response."  Def.'s Resp. Supplying Cases at 1.  As the government supplied plaintiff with copies of the cases, the Court denies as moot plaintiff's motion for leave to obtain a copy of the cases.

asserts: "though the Commissary and Prisoner Trust Funds are 'classified as a "trust" under 31 U.S.C. § 1321(a), . . . such classification alone is not sufficient to establish that Congress intended to impose specific fiduciary obligations on the United States that would subject it to a claim for monetary damages for their breach.'" Def.'s MTD at 4–5 (citing *Spengler*, 127 Fed. Cl. at 601).

Without citing any supporting case law, the government proclaims: "While the claims of the plaintiff in *Spengler* related to the Commissary and Welfare Fund, and not to the Prisoner Trust Fund like Mr. Davis's claim, the [c]ourt's holding is equally applicable here." Def.'s MTD Reply at 2. In its 16 June 2021 Order, the Court ordered supplemental briefing seeking a more thorough review of the jurisdictional issue. *See* Order at 4. In its supplemental brief, the government concedes, "the Court may interpret 31 U.S.C. § 1321(a)(21) as imposing a fiduciary duty upon the United States." Def.'s Suppl. Br. at 5. Although, the government argues, "even if a fiduciary duty exists, 'the Court must . . . determine whether [31 U.S.C. § 1321(a)(21)] can be fairly interpreted as mandating compensation for damages sustained as a result of a breach of the duties [31 U.S.C. § 1321(a)(21)] imposes.'" *Id.* (citing *Spengler v. United States*, 688 F. App'x 917, 921 (Fed. Cir. 2017)).

Additionally, the government argues dismissal for lack of subject matter jurisdiction is proper because: (1) "this [c]ourt has held that 'withdrawals from [a] plaintiff's prison account are regulated by statute and not by contract,'" *id.* at 6 (citing *Dudley v. United States*, 61 Fed. Cl. 685, 688 (2004)); and (2) "it is well-established that this Court does not process [sic] jurisdiction over an alleged violation of rights under the Due Process Clause of the Fifth Amendment because it is not money-mandating." Def.'s MTD Reply at 3 (citing *James v. Caldera*, 159 F.3d 573, 581 (Fed. Cir. 1998)).

## B.  Plaintiff's Arguments

Plaintiff argues this Court has subject matter jurisdiction because "this claim is founded upon a regulation of the USBOP, USBOP Program Statement No. 4500.12, titled, Trust Fund/Deposit Manual; a regulation of the United States Treasury, the United States Treasury Financial Manual; 31 U.S.C. § 3702(c); and/or, an implied contract with the United States." Pl.'s MTD Resp. at 3 (quoting Am. Compl. at 2). "This is an illegal exaction claim[,]" plaintiff asserts, where "the United States Treasury illegally demanded the withdrawal of $400.00 from the Prisoner Trust Fund Account that the [USBOP] has created for his use." Am. Compl. at 2.

Plaintiff contends, "[t]he very fact that Prisoner Trust Fund accounts are 'trust funds,' implies that any monies that are deposited into such accounts are to be held in trust by the USBOP"; thus, "this illegal exaction claim could be considered alone as being founded upon an 'implied contract with the United States.'" *Id.* at 4 (quoting 28 U.S.C. § 1491(a)(1)). In his response to the government's motion to dismiss, plaintiff notes *Spengler* is distinguishable and the government's reliance on it is misguided, because "[he] is not claiming to be a beneficiary of the USBOP Commissary Fund," but instead "is claiming that $400.00 of his personal money was illegally exacted from his Prisoner Trust Fund Account." Pl.'s MTD Resp. at 5. In plaintiff's supplemental brief, he further comments: "[T]he United States acknowledges that 31 U.S.C. § 1321(a)(21) imposes a fiduciary duty upon it, and that the said fiduciary duty is sufficient to

support Tucker Act jurisdiction." Pl.'s Suppl. Resp. Br. at 2.  Relying on Judge Wolski's opinion in *Salter* and the government's acknowledgement of a fiduciary duty in its supplemental brief, plaintiff asserts: "31 U.S.C. § 1321(a)(21) imposes a fiduciary duty upon the United States, [therefore,] this Court should . . . conclude that it has the subject-matter jurisdiction to entertain [his] illegal exaction claim." *Id.* at 4–5 (citing *Salter*, 2011 WL 6890645).

Plaintiff also states, "if this Court finds that none of the various sources [plaintiff] identified . . . which his said illegal exaction claim is founded upon . . . gives this Court jurisdiction, . . . then [plaintiff] asks this Court to consider . . . the validation of an illegal exaction claim under the 5th Amendment." Pl.'s MTD Resp. at 5–6.  "An illegal exaction under the Due Process Clause exists . . . if money has been 'improperly exacted or retained' by the government[;] . . . . [t]hus, this Court should conclude that it has jurisdiction over this case." *Id.* (quoting *Casa de Cambio Comdiv S.A., de C.V. v. United States* ("*Casa de Cambio*"), 291 F.3d 1356, 1363 (Fed. Cir. 2002)).

## III.  Legal Standard of the Government's Motion to Dismiss

In considering a motion to dismiss for lack of subject matter jurisdiction, "a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), "and draw all reasonable inferences in favor of the plaintiff," *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)).  Plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) (citations omitted).  "If the Court of Federal Claims determines that it lacks subject matter jurisdiction, it must dismiss the claim." *Kissi v. United States*, 493 F. App'x 57, 58 (Fed. Cir. 2012) (per curiam) (citing RCFC 12(h)(3)).

"[T]he Court of Federal Claims, like all federal courts, is a court of limited jurisdiction." *Terran ex rel. Terran v. Sec'y of Health & Hum. Servs.*, 195 F.3d 1302, 1309 (Fed. Cir. 1999). Under the Tucker Act,

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2018).  *Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (citation omitted); however, this court has long recognized "the leniency afforded to a *pro se* litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements," *Minehan v. United States*, 75 Fed. Cl. 249, 253 (2007) (citations omitted).  A *pro se* plaintiff— like any other plaintiff—"bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." *Riles v. United States*, 93 Fed. Cl. 163, 165 (2010) (citing *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002)).

## IV.  Analysis

### A.  Jurisdiction Over Plaintiff's Illegal Exaction Claim

An illegal exaction occurs "when 'the plaintiff has paid money over to the [g]overnment, directly or in effect, and seeks return of all or part of that sum' that 'was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'"  *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572–73 (Fed. Cir. 1996) (quoting *Eastport S. S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967)) (finding plaintiffs could maintain an illegal exaction suit under the Tucker Act when the government compelled airlines to shoulder costs which the government had a legal duty to bear); *see also id.* at 1573 (quoting *Clapp v. United States*, 117 F. Supp. 576, 580 (Ct. Cl. 1954)) ("[A]n illegal exaction has occurred when 'the [g]overnment has the citizen's money in its pocket.'"), *cert. denied*, 348 U.S. 834.  "The Tucker Act provides jurisdiction to recover an illegal exaction by government officials when the exaction is based on an asserted statutory power."  *Id.* at 1573 (citing *Eastport S. S. Corp.*, 372 F.2d at 1007–08) (citation omitted).

The Federal Circuit recently clarified:  "Allegations of subject matter jurisdiction [in illegal exaction claims], to suffice, must satisfy a relatively low standard—must exceed a threshold that 'has been equated with such concepts as "essentially fictitious," "wholly insubstantial," "obviously frivolous," and "obviously without merit."'"  *Boeing Co. v. United States*, 968 F.3d 1371, 1383 (Fed. Cir. 2020) (quoting *Shapiro v. McManus*, 577 U.S. 39, 40 (2015)).  "Thus, to establish Tucker Act jurisdiction for an illegal exaction claim, a party that has paid money over to the government and seeks its return must make a non-frivolous allegation that the government, in obtaining the money, has violated the Constitution, a statute, or a regulation."  *Id.*; *see Owens v. United States*, No. 99-5021, 1999 U.S. App. LEXIS 18341, at *5 (Fed. Cir. Aug. 6, 1999) (quoting *Aerolineas Argentinas*, 77 F.3d at 1572) ("Tucker Act claims may be made for recovery of monies that the government has required to be paid contrary to law. . . .").  The Federal Circuit reaffirmed:  "We have, since [*Norman v. United States*, 429 F.3d 1081 (Fed. Cir. 2005)], assumed jurisdiction over statutory illegal exaction claims with no regard for whether the statutes were 'money-mandating.'"[2]  *Boeing Co.*, 968 F.3d at 1384 (citations

---

[2] In its supplemental brief, the government states:  "The specific question before the Court is whether 31 U.S.C. § 1321(a)(21) is a money-mandating source of law sufficient to invoke the Court's jurisdiction under the Tucker Act."  Def.'s Suppl. Br. at 1 (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)).  The government further asserts, "[r]esolution of this question turns on a two-[part] inquiry:  (i) whether 31 U.S.C. § 1321(a)(21) imposes a 'fiduciary duty' on the United States, and if so; (ii) whether the statute 'mandat[es] compensation for damages sustained as a result of a breach' of the fiduciary duty the statute imposes."  *Id.* (citing *Spengler*, 688 F. App'x at 921).  As mentioned *supra*, the Federal Circuit clarified:  "We have, since *Norman*, assumed jurisdiction over statutory illegal exaction claims with no regard for whether the statutes were 'money-mandating.'"  *Boeing Co.*, 968 F.3d at 1384 (first citing *Am. Airlines, Inc. v. United States*, 551 F.3d 1294, 1296 (Fed. Cir. 2008); then citing *Lummi Tribe of the Lummi Rsrv., Washington v. United States*, 870 F.3d 1313, 1317–19 (Fed. Cir. 2017); and then citing *Virgin Islands Port Auth. v. United States*, 922 F.3d 1328, 1333–34 (Fed. Cir. 2019)).  The government's reliance on superseded law is misplaced; therefore, the Court follows the recent Federal Circuit decision in *Boeing Co.*  In this court, Judge Solomson recently applied the *Boeing Co.* jurisdictional rule in *Gulley*.  *See Gulley v. United States*, 150 Fed. Cl. 405, 419 (2020) (citing *Boeing Co.*, 968 F.3d at 1384) ("To resolve any remaining ambiguity in the law, the Federal Circuit explained [in *Boeing Co.*] that '[w]e have, since *Norman*, assumed jurisdiction over statutory illegal exaction claims with no regard for whether the statutes were 'money-mandating . . . .'").

omitted); *see Gulley*, 150 Fed. Cl. at 419–20 (applying the Federal Circuit's clarification in *Boeing Co.* and holding "[plaintiff] was not required to identify a money-mandating source of law to support his putative illegal exaction claim"); *Perry v. United States*, 149 Fed. Cl. 1, 32 (2020) (finding "no basis to engraft money-mandating requirements onto illegal exaction claims"), *aff'd*, No. 2020-2084, 2021 WL 2395075 (Fed. Cir. July 13, 2021). Thus, the Court's jurisdiction over allegations of illegal exaction requires nonfrivolous facts demonstrating: (1) plaintiff paid money to the government, either directly or in effect; and (2) the sum was obtained in contravention of the Constitution, a statute, or a regulation. *Boeing Co.*, 968 F.3d at 1383; *Aerolineas Argentinas*, 77 F.3d at 1572–73.

To satisfy the first element of the illegal exaction test, plaintiff "must make a non-frivolous allegation," *Boeing Co.*, 968 F.3d at 1383, "[he] paid money over to the [g]overnment, directly or in effect, and seeks return of all or part of that sum," *Aerolineas Argentinas*, 77 F.3d at 1572 (quoting *Eastport S. S. Corp.*, 372 F.2d at 1007). Plaintiff's transaction history in his amended complaint shows $400.00 was withdrawn from his Prisoner Trust Fund Account on 16 June 2020 and $400.00 was withdrawn on 23 June 2020. Am. Compl. at 13. Of these two withdrawals, plaintiff alleges "only one . . . check for $400.00 has been received by Sheliqua Fuller." *Id.* at 12 n.3. On 28 July 2020, another $400.00 was withdrawn from plaintiff's Prisoner Trust Fund Account. *Id.* at 13. Plaintiff alleges, "the United States Treasury illegally [withdrew] $400.00 from [his] Prisoner Trust Fund Account [on 28 July 2020]," *id.* at 2, and he seeks to have the $400.00 "returned to [his] Prisoner Trust Fund Account," *id.* at 10. "[A]ccept[ing] as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94, plaintiff adequately shows he "paid money over to the [g]overnment, directly or in effect, and seeks return of all or part of that sum," *Aerolineas Argentinas*, 77 F.3d at 1572 (quoting *Eastport S. S. Corp.*, 372 F.2d at 1007). *See Boeing Co.*, 968 F.3d at 1383 (quoting *Shapiro*, 577 U.S. at 40) ("Allegations of subject matter jurisdiction, to suffice, . . . must exceed a threshold that 'has been equated with such concepts as "essentially fictitious," "wholly insubstantial," "obviously frivolous," and "obviously without merit."'"); *Trusted Integration, Inc.*, 659 F.3d at 1163 (citing *Henke*, 60 F.3d at 797) ("In determining jurisdiction, a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff.").

Under the second element of the illegal exaction test, the sum must be "improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *Aerolineas Argentinas*, 77 F.3d at 1573 (quoting *Eastport S. S. Corp.*, 372 F.2d at 1007); *see id.* (citing *Eastport S. S. Corp.*, 372 F.2d at 1007–08) (noting "the exaction [must be] based on an asserted statutory power"). Plaintiff broadly asserts a host of statutes and regulations which he contends solidify the government's unlawful conduct.[3] *See* Am. Compl. at

---

[3] Plaintiff asserts his "claim is founded upon a regulation of the USBOP, USBOP Program Statement No. 4500.12, titled, Trust Fund/Deposit Manual; a regulation of the United States Treasury, the United States Treasury Financial Manual; 31 U.S.C. § 3702(c); and/or, an implied contract with the United States." Pl.'s MTD Resp. at 3 (quoting Am. Compl. at 2). Quoting USBOP Program Statement No. 4500.12, plaintiff notes, "Congress designated the 'funds of federal prisoners' and 'commissary funds' as 'trust funds' (31 U.S.C. [§] 1321). Monies acc[ru]ing to these funds were appropriated and disbursed in compliance with the terms of the trust.'" Am. Compl. at 3 (emphasis omitted) (citation omitted). Plaintiff further argues "31 U.S.C. § 1321(a)(21) imposes a fiduciary duty upon the United States." Pl.'s Suppl. Resp. Br. at 5. For the sake of clarity, the Court focuses its analysis on plaintiff's argument section 1321(a)(21) mandates some fiduciary duty; the Court does not discuss the extent of this duty.

2–7; Pl.'s MTD Resp. at 3–6.  In response, the government claims "[plaintiff] identifies 31 U.S.C. § 1321 as providing the basis for the Court's jurisdiction over his claim."  Def.'s MTD at 3 (citing Am. Compl. at 3).

Section 1321(a) classifies ninety-one different government plans "as trust funds." 31 U.S.C. § 1321(a) (2018).  Subsection (a)(21) covers "Funds of Federal prisoners," and subsection (a)(22) covers "Commissary funds, Federal prisons."  *Id.* §§ 1321(a)(21)–(22). "Amounts . . . received by the United States Government as trustee shall be deposited in an appropriate trust fund account in the Treasury. . . .  [A]mounts accruing to these funds are appropriated to be disbursed in compliance with the terms of the trust."  *Id.* § 1321(b)(1).  Both parties offer extensive background undergirding the creation of Prisoner Trust Funds and Commissary Trust Funds—highlighting the differences between the two funds.  *See* Def.'s MTD at 4 (citing *Spengler*, 127 Fed. Cl. at 601) ("The Commissary and Welfare Fund consists of revenues generated by the sale of goods at prison commissaries. . . .  The Prisoners Trust Fund, on the other hand, consists of personal monies prisoners earn working in the prison and money that is sent to them . . . while they are incarcerated."); Am. Compl. at 2–4; *see also* 19 Op. O.L.C. at 128–29 (internal citations omitted) ("[T]he [Department of Justice] established the Commissary Fund in order to finance the purchase of the articles to be sold in the commissaries, pay the salaries of commissary employees, and retain certain commissary system profits. . . . New rules, promulgated in 1932 . . . . continued to deny inmates any entitlement to commissary earnings.").

In its motion to dismiss, the government cites *Spengler* to argue, "though the Commissary and Prisoner Trust Funds are 'classified as a "trust" under 31 U.S.C. § 1321(a), . . . it is well established that such classification alone is not sufficient to establish that Congress intended to impose specific fiduciary obligations on the United States.'"  Def.'s MTD at 4–5 (citing *Spengler*, 127 Fed. Cl. at 601).  Without any additional support, the government asserts, "[w]hile the claims of the plaintiff in *Spengler* related to the Commissary and Welfare Fund, and not to the Prisoner Trust Fund like Mr. Davis's claim, the [c]ourt's holding is equally applicable here," because "[b]oth . . . are classified as trust funds pursuant to 31 U.S.C. §[§] 1321(a)(21)[–](22)."[4]  Def.'s MTD Reply at 2.  As plaintiff notes, "[t]he claims of *Spengler* are entirely different from [his] illegal exaction claim.  [He] is not claiming to be a beneficiary of the USBOP Commissary Fund . . . .  [He] is claiming . . . [his] money was illegally exacted from his Prisoner Trust Fund Account."  Pl.'s MTD Resp. at 5.

---

[4] As the Court noted in its 16 June 2021 Order:

> The court in *Spengler* agreed with the court in *Salter* that Prisoners Trust Fund accounts are distinct from Commissary Fund accounts:  "As contrasted with the monies held in the Prisoner's Trust Fund, the monies in the Commissary Fund do not in any sense belong to the prisoners; in fact, Circular No. 2244 expressly denies inmates any entitlement to the earnings of the Commissary."

Order at 3 (quoting *Spengler*, 127 Fed. Cl. at 602).  Thus, although the government looks to *Spengler* for support, the court in *Spengler* acknowledges key differences between Prisoner Trust Funds and Commissary Trust Funds. *See Spengler*, 127 Fed. Cl. at 601 (internal citations omitted) ("The Commissary and Welfare Fund consists of revenues generated by the sale of goods at prison commissaries.  The Prisoners Trust Fund, on the other hand, consists of personal monies prisoners earn working in the prison and money that is sent to them . . . while they are incarcerated.").

In *Salter*, a similarly situated plaintiff argued "31 U.S.C. § 1321(a)(21) and Circular No. 2244 impose fiduciary obligations upon the [US]BOP concerning Prisoner Trust Fund accounts," and "the [USBOP] breached its fiduciary duty as trustee of his Prisoners Trust Fund account." *Salter*, 2011 WL 6890645, at *1 (citation omitted). In denying the government's motion to dismiss, Judge Wolski held: "31 U.S.C. § 1321 and Circular No. 2244 impose fiduciary obligations upon the [US]BOP concerning Prisoners Trust Fund accounts, sufficient to support jurisdiction over the matter."[5] *Id.* at *2. In the Office of Legal Counsel ("OLC") Opinion the government cites for support, OLC states:

> Although we have established that 31 U.S.C. § 1321 and the rules set forth in Circular No. 2244 pertaining to the Commissary Fund do not impose fiduciary obligations on the [US]BOP with respect to the Commissary Fund, we believe that 31 U.S.C. § 1321 and the rules set forth in Circular No. 2244 pertaining to the Prisoners' Trust Fund *do impose fiduciary obligations on the [US]BOP with respect to moneys contained in inmates' Prisoners' Trust Fund accounts*.

19 Op. O.L.C. at 137–38 (emphasis added).[6] In "acknowledg[ing] OLC's view that 31 U.S.C. § 1321(a)(21) does impose a fiduciary duty upon the United States," Def.'s Suppl. Br. at 4 (citing 19 Op. O.L.C. at 139), the government concedes: "[T]he Court may interpret 31 U.S.C. § 1321(a)(21) as imposing a fiduciary duty upon the United States," *id.* at 5. For these reasons, the Court finds "31 U.S.C. § 1321 and Circular No. 2244 impose fiduciary obligations upon the [US]BOP concerning Prisoners Trust Fund accounts, sufficient to support jurisdiction." *Salter*, 2011 WL 6890645, at *2; 19 Op. O.L.C. at 137–39. Therefore, having established both plaintiff's withdrawn sum from his Prisoner Trust Fund account, and the government's fiduciary

---

[5] In discussing *Salter*, the government notes in its supplemental brief: "After surviving the [RCFC 12(b)(1)] jurisdictional hurdle, Mr. Salter's case proceeded to summary judgment, where it was dismissed." Def.'s Suppl. Br. at 3 (citing *Salter II*, 119 Fed. Cl. 359); *compare Salter*, 2011 WL 6890645, at *1–2 (denying the government's motion to dismiss without discussing the particular fiduciary relationship), *with Salter II*, 119 Fed. Cl. at 361, 364 (reiterating the government owed plaintiff fiduciary duties in administering his prisoner trust fund account, and granting the government's motion for summary judgment after analyzing the facts and concluding "plaintiff has failed to show conduct that would amount to coercion or duress" sufficient to "constitute a breach of the government's fiduciary duties as trustee of an inmate's trust fund account").

[6] OLC discusses in depth the "distinctions between the [Prisoner Trust Fund and Commissary Trust Fund]":

> First, the moneys in inmates' Prisoners' Trust Fund accounts are truly personal funds. . . . [E]ach inmate's Prisoners' Trust Fund account contains money he or she brought into prison, received from a person outside the prison, or earned while in prison. Accordingly, Circular No. 2244 establishes an elaborate accounting scheme to ensure that funds in inmates' Prisoners' Trust Fund accounts are properly credited . . . and debited . . . . Second, unlike provisions of Circular No. 2244 pertaining to the commissaries and Commissary Fund, provisions pertaining to the Prisoners' Trust Fund require the [US]BOP to act in the best interest of individual inmates in managing their Prisoners' Trust Fund accounts. . . . "[M]oney may be received and placed to the credit of the individual inmates in the 'Prisoners' Trust Fund,' *to be used for their benefit* . . . ." Third, the [US]BOP has historically recognized fiduciary obligations with respect to inmates' Prisoners' Trust Fund accounts, generally refusing "to allow attachment or levy on the prisoners' trust funds as inconsistent with the provisions of the trust." . . . [OLC] has stated that "[a] withdrawal of [Prisoners' Trust Fund moneys] without the inmate's consent . . . would seem to constitute a breach of the terms of the trust."

19 Op. O.L.C. at 138–39 (footnotes omitted) (internal citations omitted).

obligations under 31 U.S.C. § 1321(a)(21), this Court is satisfied with subject matter jurisdiction over plaintiff's illegal exaction claim.  *Boeing Co.*, 968 F.3d at 1383; *Aerolineas Argentinas*, 77 F.3d at 1572–73; *Salter*, 2011 WL 6890645, at *2; 19 Op. O.L.C. at 137–39.

### B.  Jurisdiction Over Plaintiff's Claim Under an Implied Contract Theory

Plaintiff contends his "claim is founded upon . . . an implied contract with the United States."  Am. Compl. at 2.  Citing the "history of the Prisoner Trust Fund Account . . . provided," *id.* at 2–3, in the USBOP Trust Fund/Deposit Manual, plaintiff asserts:  "[His] illegal exaction claim could be considered alone as being founded upon an 'implied contract with the United States.'"  *Id.* at 4 (quoting 28 U.S.C. § 1491(a)(1)).  In response, the government argues, "nothing in the [US]BOP's Trust Fund Manual provides for a remedy against the United States for an erroneous withdrawal from an inmate's Trust Fund account," Def.'s Suppl. Br. at 6 (citing Am. Compl. at 7–10), and "nothing in [31 U.S.C. § 1321(a)] provides for reimbursement for withdrawal from an inmate's Trust Fund account," *id.*  The government further asserts, "an implied contract requires a 'meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'"  *Id.* (quoting *Hercules Inc. v. United States*, 516 U.S. 417, 424 (1996)).  The government adds, "this Court has held that 'withdrawals from [a] plaintiff's prison account are regulated by statute and not by contract.'"  *Id.* (quoting *Dudley*, 61 Fed. Cl. at 688).

The Tucker Act provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).  The Supreme Court has "repeatedly held that [Tucker Act] jurisdiction extends only to contracts either express or implied in fact, and not to claims on contracts implied in law."  *Hercules Inc.*, 516 U.S. at 423 (citations omitted); *see also Grady v. United States*, 565 F. App'x 870, 871 (Fed. Cir. 2014) (citing *United States v. Mitchell*, 463 U.S. 206, 215 (1983)) ("The Tucker Act provides jurisdiction over implied-in-fact contract claims against the government.").  "An agreement implied in fact is 'founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'"  *Hercules Inc.*, 516 U.S. at 424 (quoting *Baltimore & Ohio R.R. Co. v. United States*, 261 U.S. 592, 597 (1923)).

"Plaintiff has the burden to prove the existence of an implied-in-fact contract."  *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003) (citing *Pac. Gas & Elec. Co. v. United States*, 3 Cl. Ct. 329, 339 (1983), *aff'd*, 738 F.2d 452 (Fed. Cir. 1984)).  Thus, for this Court to possess jurisdiction based on an alleged agreement implied in fact, "a claimant must show 'mutuality of intent to contract, offer and acceptance, and that the officer whose conduct is relied

- 10 -

upon had actual authority to bind the government in contract.'" *Ysasi v. Rivkind*, 856 F.2d 1520, 1525 (Fed. Cir. 1988) (citing *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1575 (Fed. Cir. 1984)). In his amended complaint, plaintiff argues the purpose and "history of the Prisoner Trust Fund Account . . . provided" in the USBOP Trust Fund/Deposit Manual "shows . . . . [his] illegal exaction claim could be considered alone as being founded upon an 'implied contract with the United States.'" Am. Compl. at 2–4.

Although *pro se* litigants are granted greater leeway than parties represented by counsel, plaintiff fails to offer sufficient evidence "prov[ing] the existence of an implied-in-fact contract." *Hanlin*, 316 F.3d at 1328 (citing *Pacific Gas & Elec. Co.*, 3 Cl. Ct. at 339); *see Haines*, 404 U.S. at 520–21. The provisions in the USBOP Trust Fund/Deposit Manual quoted by plaintiff fail to "show 'mutuality of intent to contract, offer and acceptance, and that the officer whose conduct is relied upon had actual authority to bind the government in contract.'" *Ysasi*, 856 F.2d at 1525 (citing *H.F. Allen Orchards*, 749 F.2d at 1575). Therefore, because plaintiff fails to properly surmount the burden of proving an implied-in-fact contract, the Court does not possess subject matter jurisdiction over his illegal exaction claim based on an implied contract theory. *Hanlin*, 316 F.3d at 1328; *Ysasi*, 856 F.2d at 1525; *Hercules Inc.*, 516 U.S. at 423; *Grady*, 565 F. App'x at 871.

### C. Jurisdiction Over Plaintiff's Due Process Claim

In the alternative, plaintiff "asks this Court to consider . . . the validation of [his] illegal exaction claim under the 5th Amendment [of the] Constitution," and he cites *Casa de Cambio*, 291 F.3d at 1363, for the proposition: "An illegal exaction under the Due Process Clause exists . . . if money has been 'improperly exacted or retained' by the government." Pl.'s MTD Resp. at 6. Without responding to plaintiff's asserted citation or distinguishing *Casa de Cambio*, the government summarily responded: "[I]t is well-established that this Court does not process [sic] jurisdiction over an alleged violation of rights under the Due Process Clause of the Fifth Amendment because it is not money-mandating." Def.'s MTD Reply at 3 (citing *James*, 159 F.3d at 581).

"The Tucker [A]ct . . . is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976). Thus, alleged due process claims typically do not supply the Court with jurisdiction because "the Due Process Clauses of the Fifth and Fourteenth Amendments . . . . do not mandate payment of money by the government." *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995). As plaintiff contends, however, the Federal Circuit held in *Casa de Cambio*: "Our cases have established that there is no jurisdiction under the Tucker Act over a Due Process claim *unless it constitutes an illegal exaction*." *Casa de Cambio*, 291 F.3d at 1363 (emphasis added) (first citing *Murray v. United States*, 817 F.2d 1580, 1583 (Fed. Cir. 1987), *cert. denied*, 489 U.S. 1055 (1989); and then citing *Inupiat Cmty. of Arctic Slope v. United States*, 680 F.2d 122, 132 (Ct. Cl. 1982)); *see id.* (citing *Testan*, 424 U.S. at 401) ("An illegal exaction under the Due Process clause exists only if money has been 'improperly exacted or retained' by the government."); *Norman*, 429 F.3d at 1095 (quoting *Aerolineas Argentinas*, 77 F.3d at 1573) ("The Court of Federal Claims ordinarily lacks

jurisdiction over due process claims under the Tucker Act . . . but has been held to have jurisdiction over illegal exaction claims 'when the exaction is based upon an asserted statutory power.'"). "An illegal exaction involves a deprivation of property without due process of law, in violation of the Due Process Clause of the Fifth Amendment to the Constitution." *Norman*, 429 F.3d at 1095.

As the Court discusses *supra* Section IV.A., the Court is satisfied with subject matter jurisdiction over plaintiff's illegal exaction claim. *Boeing Co.*, 968 F.3d at 1383; *Aerolineas Argentinas*, 77 F.3d at 1572–73; *Salter*, 2011 WL 6890645, at *2; 19 Op. O.L.C. at 137–39. Regarding plaintiff's due process claim, the government only cites *James*, 159 F.3d 573, in which plaintiff claimed, "in discharging him, the Army had wrongfully denied him a five-month extension of his enlistment." *Id.* at 575. Although the court in *James* stated, "it is well established that the Court of Federal Claims lacks jurisdiction over [Due Process Clause] claims," *id.* at 573, James sought correction of his military service record, not an illegal exaction, *id.* at 576. The government's citation to *James* therefore is not decisive for this case, and the government has not yet addressed *Casa de Cambio* or distinguished plaintiff's illegal exaction claim from illegal exaction claims rooted in the Due Process Clause. *Casa de Cambio*, 291 F.3d at 1363. The Federal Circuit in *Casa de Cambio* affirmed the Court of Federal Claims' decision which, notably, did not deny plaintiff's illegal exaction due process argument for lack of subject matter jurisdiction, but rather, "for failure to state a claim because the government had not required Casa to pay any money either to the government or to a third party." *Id.* at 1358. As the Court confirms jurisdiction over plaintiff's illegal exaction claim, and the government briefing fails to discuss *Casa de Cambio*, the Court need not decide the motion to dismiss regarding plaintiff's due process claims at this time.

## V.  Plaintiff's Alternative Request for Transfer of Venue

In plaintiff's amended complaint, he asserts: "if this Court finds that there is a want of jurisdiction, then [he] respectfully prays that this Court transfer[] this action pursuant to 28 U.S.C. § 1631 to the proper court." Am. Compl. at 7. The government responded in its motion to dismiss, "this Court should not transfer Mr. Davis' case to another court, . . . because Mr. Davis has not exhausted his administrative remedies." Def.'s MTD at 6. Further, the government contends: "Mr. Davis' failure to exhaust his administrative remedies would deprive the district court of jurisdiction over his case, and therefore a transfer to district court pursuant to 28 U.S.C. § 1631 would be inappropriate." *Id.* (citing *Spengler*, 127 Fed. Cl. at 605–06).

As the Court discusses *supra* Section IV.A., its jurisdiction over plaintiff's illegal exaction claim is properly satisfied. Therefore, transfer of venue pursuant to 28 U.S.C. § 1631 is unnecessary, and plaintiff's request for transfer is denied as moot.

## VI.  Conclusion

For the foregoing reasons, the Court:  (1) **GRANTS in PART and DENIES in PART** the government's motion to dismiss; and (2) **DENIES as MOOT** plaintiff's motion for leave to obtain a copy of cases to respond to the Court's order of supplemental briefing.

**IT IS SO ORDERED.**

<u>s/ Ryan T. Holte</u>
RYAN T. HOLTE
Judge