# In the United States Court of Federal Claims

No. 20-1071

(Filed:  8 February 2023)

NOT FOR PUBLICATION

```
*****************************************
DONALD LEWIS DAVIS,                     *
                                        *
                  Plaintiff,            *
                                        *
v.                                      *
                                        *
THE UNITED STATES,                      *
                                        *
                  Defendant.            *
                                        *
*****************************************
```

*Donald Lewis Davis*, *pro se*, of Fairton, NJ.

*Sonia W. Murphy*, Trial Attorney, with whom were *Lisa L. Donahue*, Assistant Director, *Patricia M. McCarthy*, Director, *Brian M. Boynton*, Deputy Principal Assistant Attorney General, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, all of Washington, DC, for defendant.

## OPINION AND ORDER

**HOLTE**, **Judge**.

*Pro se* plaintiff, Donald Lewis Davis, a prisoner in a federal correctional institution in Fairton, New Jersey, filed a complaint alleging illegal exaction and a violation of due process against the United States Department of the Treasury.  Plaintiff and the government filed cross-motions for summary judgment pursuant to Rule 56 of the Rules of the Court of Federal Claims.  The government additionally filed a declaration and corresponding exhibits.  For the following reasons, the Court grants the government's cross-motion for summary judgment and denies plaintiff's motion for summary judgment.

**I.      Background**

   **A.      Factual History**

The following factual history comes from the Court's 20 May 2022 Opinion and Order addressing the government's motion to dismiss:

> Plaintiff is an inmate of a federal correctional institution in Fairton, New Jersey. *See* Pet. Under 28 U.S.C. § 1491 for the Refund of Money Erroneously Received

> ("Compl.") at 2, ECF No. 1; Appl. to Proceed *In Forma Pauperis* ("Pl.'s IFP Appl."), ECF No. 8; Am. Compl. (Rules of the Court of Federal Claims ("RCFC") 15(a)(1)(B)) ("Am. Compl.") at 7, ECF No. 10.  On 21 December 2019 and 20 January 2020, plaintiff requested the United States Bureau of Prisons ("USBOP") withdraw $400.00 "from [his] Prisoner Trust Fund Account, to be sent to" Sheliqua Fuller.  Am. Compl. at 8.  After neither "United States Treasury check for . . . $400.00 . . . reached the aforesaid destination[,]" plaintiff asked "the USBOP to cancel" both checks.  *Id.* at 8–9.  Following plaintiff's cancellation request, both $400.00 disbursements were "returned to [plaintiff's] Prisoner Trust Fund Account on [10 June 2020]."  *Id.* at 9.
>
> On 16 June 2020 and 23 June 2020, plaintiff "again requested the USBOP to withdraw $400.00 from [his] Prisoner Trust Fund Account, to be sent to Sheliqua Fuller at a different address."  *Id.*  "Of the two $400.00 requests that w[ere] withdrawn from [his] Prisoner Trust Fund Account," plaintiff states "only one . . . check for $400.00 [was] received by Sheliqua Fuller."  *Id.* at 12 n.3.  Plaintiff contends he "was notified that Sheliqua Fuller received a United States Treasury check for $400.00 . . . , but when she cashed it, the United States Treasury viewed it as a payment over one of the [21 December 2019 and 20 January 2020] cancell[ed checks]."  *Id.* at 9–10 (footnote omitted).  Plaintiff contends the "payment over one of the [21 December 2019 and 20 January 2020] cancellations" resulted in an additional "$400.00 [being] illegally withdrawn [on 28 July 2020] from [his] Prisoner Trust Fund Account into the pockets of the United States Treasury"—constituting an "illegal exaction."  Am. Compl. at 10.  When plaintiff "presented this error to the prison officials[,] . . . they said that Sheliqua Fuller cashed one of the . . . checks that" plaintiff cancelled, "without providing [p]laintiff Davis any proof."  *Id.*  As remedy, plaintiff seeks "to have the United States Treasury notify the USBOP of its said error, and to have the $400.00 that was illegally withdrawn from [his] Prisoner Trust Fund Account . . . returned to [his] Prisoner Trust Fund Account."  *Id.*

20 May 2022 Op. & Order at 1–2, ECF No. 29 (alterations in original).

The parties dispute whether plaintiff's consent was required for processing the withdrawal from plaintiff's first request.  *See* Pl.'s Mot. for Summ. J. ("Pl.'s SJ Mot.") at 5–6, ECF 32; Def.'s Opp'n to Pl.'s Mot. for Summ. J. and Cross Mot. for Summ. J. ("Gov't's SJ Cross Mot.") at 2–4, ECF 35; Gov't's SJ Cross Mot. Exs. ("Gov't's SJ Exs."),  ECF 35–2.  On 21 December 2019, plaintiff requested the withdrawal.  Pl.'s SJ Mot. at 3; Gov't's SJ Cross Mot. at 2.  On 3 January 2020, the government processed plaintiff's withdrawal request, and on 9 January 2020, the government issued the check.  Gov't's SJ Cross Mot. at 2; Gov't' SJ Exs. at 1–2 (Ex. A), 3–4 (Ex. B).  On 10 June 2020, plaintiff requested the check's cancellation and the $400 returned to plaintiff's account.  Pl.'s SJ Mot. at 4; Gov't's SJ Cross Mot. at 2.  On 15 June 2020, the check was electronically endorsed and on 28 July 2020, the government processed the payment over cancellation and withdrew the $400 from plaintiff's account.  Pl.'s SJ Mot. at 4; Gov't's SJ Cross Mot. at 2–3; Gov't's SJ Exs. at 3–4 (Ex. B).  The check in question was dated 9

January 2020 hereinafter referred to as the "9 January 2020 check." *See* Gov't's SJ Exs. at 3–4 (Ex. B).

### B.   Procedural History

The following procedural history comes from the Court's 20 May 2022 Opinion and Order on the government's motion to dismiss:

> Plaintiff filed his initial request for relief on 17 August 2020, and on the same day, he filed a motion for leave to file all papers in written print. *See* Compl.; Mot. for Leave to File All Papers in This Action in Written Print, ECF No. 2. Plaintiff later filed an application to proceed *In Forma Pauperis* and a form for prisoner authorization of payment of filing fees. *See* Pl.'s IFP Appl. The government then filed its initial motion to dismiss. *See* Def.'s Mot. to Dismiss, ECF No. 9. On 10 November 2020, plaintiff filed an amended complaint, to which the government responded by filing its most recent motion to dismiss on 8 December 2020. *See* Am. Compl.; Def.'s Mot. to Dismiss Pl.'s Am. Compl. ("Def.'s MTD"), ECF No. 13. Plaintiff then responded to the government's motion to dismiss and the government replied in support of its position. *See* Pl.'s Reply to Def.'s 12-8-20 Mot. to Dismiss ("Pl.'s MTD Resp."), ECF No. 15; Def.'s Reply in Supp. of its Mot. to Dismiss Pl.'s Am. Compl. ("Def.'s MTD Reply"), ECF No. 16.
>
> On 16 June 2021, the Court issued an Order: (1) ordering supplemental briefing; (2) denying as moot the government's first motion to dismiss; and (3) staying the government's second motion to dismiss until the conclusion of supplemental briefing. *See* Order, ECF No. 17. Plaintiff responded by filing a motion for leave to obtain a copy of cases to address the Court's order of supplemental briefing, and the government responded to plaintiff's request by providing copies of the cases. *See* Pl. Davis' Mot. for Leave to Obtain a Copy of the Cases that this Court Ordered Him to Address ("Pl.'s Mot. for Cases"), ECF No. 18; Def.'s Resp. to Pl.'s Mot. for Leave to Obtain a Copy of the Cases that the Court Ordered Him to Address ("Def.'s Resp. Supplying Cases"), ECF No. 19. The government filed its supplemental brief on 21 July 2021, and plaintiff responded on 31 August 2021. *See* Def.'s Suppl. Briefing Pursuant to the Court's Order of June 16, 2021 (ECF No. 17) ("Def.'s Suppl. Br."), ECF No. 22; Pl.'s Suppl. Resp. Br., ECF No. 27. The government replied to plaintiff's response on 29 September 2021. *See* Def.'s Reply to Pl.'s Suppl. Resp. Br., ECF No. 28.

20 May 2022 Op. & Order at 2–3. The Court granted in part and denied in part the government's motion to dismiss in its 20 May 2022 Opinion and Order. *Id.* at 12.

On 27 June 2022, plaintiff filed a motion for summary judgment, arguing the undisputed factual record shows the withdrawal was in contravention of the USBOP Trust Fund Manual ("USBOP Manual") regulations, meeting the illegal exaction standard. *See* Pl.'s SJ Mot. at 6–7. On 1 August 2022, the government responded and filed a cross-motion for summary judgment agreeing to an undisputed factual record but contending the withdrawal was not a contravention

- 3 -

of the USBOP Manual regulations, and therefore the illegal exaction standard was not met. *See* Gov't's SJ Cross Mot. at 2–3. In support of the cross-motion, the government filed a declaration from Mr. Christopher Fritts, a Senior Trust Fund Analyst for the Federal Bureau of Prisons ("Fritts Decl."), ECF No. 35-1, and exhibits, including a copy of the endorsed 9 January 2020 check at issue and the other endorsed checks relevant to the transaction record, Gov't's SJ Exs. at 3–4 (Ex. B), 11–12 (Ex. F), 15–16 (Ex. H). On 19 August 2022, plaintiff replied, disputing the authenticity of the copy of the endorsed check in Exhibit B and asserting a genuine issue of material fact precludes summary judgment. *See* Pl.'s Opp'n to Def.'s Cross Mot. for Summ. J. ("Pl.'s SJ Resp.") at 6–7, ECF No. 36. On 1 September 2022, the government responded, contending the disputed authenticity of the check in Exhibit B did not preclude summary judgment. *See* Def.'s Reply in Supp. of its Cross Mot. for Summ. J. ("Gov't's SJ Reply") at 2–3, ECF No. 37.

## II. Parties' Arguments

Plaintiff argues the undisputed facts meet the illegal exaction standard and moves for summary judgment pursuant to RCFC 56(a). *See* Pl.'s SJ Mot. at 1, 5–8. Plaintiff asserts no dispute over the material facts related to the transaction process. *See id.* at 3–4. Plaintiff quotes the USBOP Manual, which states "No funds are withdrawn from an inmate's account without his/her prior consent." Pl.'s SJ Mot. at 5 (quoting USBOP Manual, ch. 10, § 10.1 at 87 (revised March 14, 2018)). Plaintiff argues the $400 withdrawal for payment over cancellation is an illegal exaction as an improper payment in contravention of the USBOP Manual regulations because the withdrawal did not have his required consent. *Id.* at 5–8. Plaintiff argues the facts meet the illegal exaction standard, making summary judgment appropriate. *See id.* at 5–8.

The government opposes plaintiff's motion for summary judgment and moves in a cross-motion for summary judgment in its favor. Govt's' SJ Cross Mot. at 1. The government does not contest the facts of the transaction record or the lack of consent from plaintiff for the $400 withdrawal to cover the payment over cancellation of the 9 January 2020 check. *See id.* at 1–5. The government, however, contends the illegal exaction standard is not met because the withdrawal was not improperly taken in contravention of the USBOP Manual regulations. *Id.* at 5–6 (citing USBOP Manual at 87; *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572–73 (Fed. Cir. 1996) (quoting *Eastport S. S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967))). The government argues the USBOP Manual explicitly authorizes a withdrawal without an inmate's prior consent when processing payments over a cancellation. *Id.* at 6 (citing USBOP Manual at 87 ("No funds are withdrawn from an inmate's account without his/her prior consent except as noted below. The inmate's prior consent is his/her signature; it is required to authorize withdrawals, except: . . . processed for payments over cancel.")). The government asserts the expressly listed exception to the consent requirement makes the withdrawal for the payment over cancellation proper and in accordance with USBOP Manual regulations, falling short of an illegal exaction and warranting summary judgment in the government's favor. *See* Gov't's SJ Cross Mot. at 6.

In response, plaintiff disputes the authenticity of the copy of the 9 January 2020 check in Exhibit B and argues the authenticity is a material fact precluding summary judgment. *See* Pl.'s SJ Resp. at 2. The government provided copies of the other endorsed checks in the transaction

record in Exhibits F and H and plaintiff does not dispute the authenticity of the other endorsed checks. *Id.* at 2. Plaintiff contrasts the endorsed checks in Exhibits F and H with the endorsed check in Exhibit B to argue the 9 January 2020 check in Exhibit B has "suspicious differences" in its endorsement, such as minor differences in the times stamps and Ms. Fuller's signatures. *See id.* at 3–6. Plaintiff contends the check's suspicious differences bring the authenticity of the check in Exhibit B into question under Rule 901 of the Federal Rules of Evidence, creating a disputed material fact precluding summary judgment in the government's favor. *Id.* Plaintiff states "the authenticity of said Exhibit B is questionable, and the said suspicious differences '[establish] the . . . presence of a genuine dispute.'" *Id.* at 6 (quoting RCFC 56(c)(1)(B)).

The government argues the authenticity of the check in Exhibit B cannot be a genuinely disputed material fact because Mr. Fritts testified in his declaration to the check's authenticity and the minor differences are insignificant. *See* Gov't's SJ Reply at 3. This is "sufficient to support a finding they are what the Government claims them to be." *See id.* (citing *Marine Indus. Constr., LLC v. United States*, 151 Fed. Cl. 349, 359–60 (2020) (Holte, J.)). The government restates its argument: there are no genuinely disputed material fact, so the illegal exaction standard is not met, and summary judgment is appropriate. *See id.*

### III. Legal Standards Regarding Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In evaluating a motion for summary judgment, a court draws all inferences in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant must show the "absence of any genuine issues of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the moving party has met its burden, the burden shifts to the nonmovant who must present sufficient evidence to show a dispute over a material fact allowing a reasonable factfinder to rule in its favor. *Anderson*, 477 U.S. at 255–56. The evidence does not need to be admissible, but mere denials, conclusory statements, or evidence not significantly probative will not defeat summary judgment. *Celotex Corp.*, 477 U.S. at 324.

Under the summary judgment standard, a fact is material when it may significantly affect the outcome of the case under the relevant substantive law. *See Anderson*, 477 U.S. at 248. The applicable substantive law here is the illegal exaction standard. An illegal exaction is "when 'the plaintiff has paid money over to the [g]overnment directly or in effect, and seeks return of all or part of that sum' that 'was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'" *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572–73 (Fed. Cir. 1996) (quoting *Eastport S. S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967)).

### IV. Analysis

While neither plaintiff nor the government disagree regarding the transaction record, the parties disagree on whether the $400 withdrawal to cover the payment over cancellation of the 9 January 2020 check is an illegal exaction from plaintiff's account and whether the check is

authentic.  *See* Pl.'s SJ Mot. at 3–4; Pl.'s SJ Resp. at 5; Gov't's SJ Cross Mot. at 4.  The Court first considers whether the $400 withdrawal to cover the payment over cancellation of the 9 January 2020 check was an illegal exaction—an improper payment in contravention of the USBOP Manual regulations.  The Court then considers whether plaintiff's concerns over the authenticity of the copy of the endorsed 9 January 2020 check in Exhibit B raises an issue of material fact that precludes summary judgment.

### A. Whether the Withdrawal from Plaintiff's Account Properly Followed the USBOP Manual Regulations

The parties dispute whether the $400 withdrawal from plaintiff's account to cover the payment over cancellation required plaintiff's consent.  Plaintiff and the government agree as to the transaction record and plaintiff's lack of consent for the $400 withdrawal for the payment over cancellation of the 9 January 2020 check to Ms. Fuller which was endorsed and deposited on 15 June 2020.  *See id.* at 3–4; Gov't's SJ Cross Mot. at 2–5; Fritts Decl. ¶¶ 1–10; Gov't's Exs. at 3–4 (Ex. B).  Plaintiff does not dispute he authorized the 9 January 2020 check for $400 on 21 December 2019, requested its cancellation on 10 June 2020, yet had the $400 withdrawn from his account on 28 July 2020.  *See* Pl.'s SJ Mot. at 3–4.  Plaintiff asserts the withdrawal after his requested cancellation was an illegal exaction—an improper payment against the USBOP Manual regulations—because he did not consent to the withdrawal after the cancellation request.  *See id.* at 5–8.  The government does not contest the transaction record timeline; the government asserts plaintiff's consent was not required for the withdrawal from his account to cover the payment of the 9 January 2020 check.  *See* Gov't's SJ Cross Mot. at 1–2.  The government cites an exception within the USBOP Manual requiring consent for a withdrawal—which authorizes the withdrawal to cover a payment without consent—to show no illegal exaction occurred.  *See id.* at 5–6.  The government asserts the withdrawal was not improperly taken from plaintiff in contravention of the USBOP Manual regulations.  *See id.* (citing *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572–73 (Fed. Cir. 1996)).

As stated in the Court's 20 May 2022 Opinion and Order on the government's motion to dismiss:

> An illegal exaction occurs "when 'the plaintiff has paid money over to the [g]overnment, directly or in effect, and seeks return of all or part of that sum' that 'was improperly paid, exacted, or taken from the claimant *in contravention of the Constitution, a statute, or a regulation.*'"  *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572–73 (Fed. Cir. 1996) (quoting *Eastport S. S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967)) (finding plaintiffs could maintain an illegal exaction suit under the Tucker Act when the government compelled airlines to shoulder costs which the government had a legal duty to bear); *see also id.* at 1573 (quoting *Clapp v. United States*, 117 F. Supp. 576, 580 (Ct. Cl. 1954)) ("[A]n illegal exaction has occurred when 'the [g]overnment has the citizen's money in its pocket.'"), *cert. denied*, 348 U.S. 834.

20 May 2022 Op. & Order at 6 (emphasis added).  In the context of these facts, if plaintiff's consent was needed by law, the withdrawal would be an improper payment for its contravention

of USBOP Manual regulations requiring consent. *See Aerolineas Argentinas*, 77 F.3d at 1572–73 (quoting *Eastport S. S. Corp.*, 372 F.2d at 1007). The USBOP Manual Chapter 10, Section 1 discusses the authority to withdraw inmate funds and states:

> No funds are withdrawn from an inmate's account without his/her prior consent *except* as noted below. The inmate's prior consent is his/her signature; *it is required to authorize withdrawals, except*: . . . *Processed for payments over cancel*."

USBOP Manual at 87 (emphasis added). The USBOP Manual separately authorizes payments over cancel in Chapter 10, Section 5, Subsection x:

> **x. Withdrawals for Processing Payments Over Cancel.** Upon notification by the U.S. Treasury that *a previously cancelled disbursement has been negotiated, a withdrawal is processed*. This notification, via the cancelled check report from the automated accounting system, *serves as the source document for the withdrawal transaction.*
>
> [Trust Fund Accounting and Commissary System ('TRUFACS')] places the inmate account into a negative balance if sufficient funds are unavailable when processing a withdrawal type of payment over cancel. The staff member processing the withdrawal ensures that adequate documentation is available.

*Id.* at 97 (emphasis added).

Plaintiff requested the 9 January 2020 check's cancellation on 10 June 2020. Gov't's SJ Cross Mot. at 2. The 9 January 2020 check was endorsed and deposited on 15 June 2020. Gov't's SJ Cross Mot. at 2; Gov't's SJ Cross Mot. Exs. at 3–4 (Ex. B). The USBOP Manual provides for the processing of payment and the corresponding withdrawal even after a cancellation was requested. USBOP Manual at 97 ("Upon notification by the U.S. Treasury that a previously cancelled disbursement has been negotiated, a withdrawal is processed. This notification, via the cancelled check report from the automated accounting system, serves as the source document for the withdrawal transaction."). As stated in the USBOP Manual, payment over cancellation is an express exception to the requirement of consent for withdrawal, and payments over cancellation are processed after a requested-cancelled check is endorsed and deposited. *See id.* at 87. The proper withdrawal procedures according to the USBOP Manual were followed when plaintiff made the initial withdrawal request for the 9 January 2020 check, requested a cancel, yet still had the $400 withdrawn for a payment over cancellation when the check was later endorsed and deposited. *See id.* The $400 withdrawal for the payment over cancellation does not meet the illegal exaction standard because it was a proper withdrawal in accordance with the USBOP Manual, not a "contravention of . . . a regulation." *Aerolineas Argentinas*, 77 F.3d at 1572–73 (quoting *Eastport S. S. Corp.*, 372 F.2d at 1007).

### B.     No Material Fact is Disputed

The parties dispute whether the authenticity of the endorsed 9 January 2020 check is a genuine issue of material fact. *See* Pl.'s SJ Resp. at 3–6; Gov't's SJ Reply at 1–3. Plaintiff

contends the "suspicious differences" of the 9 January 2020 check to the 19 June 2020 and 2 July 2020 checks raise a genuine issue of material fact. Pl.'s SJ Resp. at 6–7. Plaintiff further alleges the suspicious differences are "evidence of forgery" and "sounds an alarm of potential misconduct from the United States employee responsible for" producing the check in Exhibit B. *Id.* at 5, 7. The government claims "The minor differences Mr. Davis raises between the checks do[] not rise to the level of significance to support a finding that [E]xhibit B should be treated differently" than Exhibits F and H. *See* Gov't's SJ Reply at 3; Gov't's SJ Exs. at 3–4 (Ex. B), 11–12 (Ex. F), 15–16 (Ex. H).

As discussed *supra*, illegal exaction occurs when withdrawals are improper. Plaintiff alleges "Exhibit B has . . . suspicious difference[s] of appearance from [the other checks] . . . and is evidence of forgery"; plaintiff, however, does not allege the signature was forged nor does he provide evidence supporting his conclusion. Pl.'s SJ Resp. at 5, 7. Moreover, plaintiff does not dispute the withdrawal from plaintiff's account properly followed the USBOP's payment over cancellation withdrawal procedures. *See* Pl.'s SJ Mot. at 3–4; USBOP Manual at 87, 97. The USBOP Manual allows for the "notification, via the cancelled check report from the automated accounting system, [to] serve[] as the source document for the withdrawal transaction."[1] USBOP Manual at 87. Mr. Fritts's declaration explains the proper procedure was followed according to the USBOP Manual to process the withdrawal for payment. *See* Fritts Decl. ¶¶ 1–10. "The notification, via the cancelled check report . . . serves as the source document" and authenticates all procedures were properly followed as Mr. Fitts attests. *See* USBOP Manual at 87. While plaintiff appears to argue about the procedures of payment, the Court cannot speculate how the procedures are issued. *See Aerolineas Argentinas*, 77 F.3d at 1572–73. Having followed proper procedure, the withdrawal was not improperly taken from plaintiff in contravention of the USBOP Manual regulations. *See Aerolineas Argentinas*, 77 F.3d at 1572–73 (quoting *Eastport S. S. Corp.*, 372 F.2d at 1007) (stating illegal exaction is an improper taking in contravention of regulations); USBOP Manual at 87; Fritts Decl. ¶¶ 1–10. The facts alleged here fall short of detailing any illegal exaction; the check-authenticity allegations regarding the deposit signature before the USBOP processing procedures were correctly followed do not "affect the outcome of the suit," so summary judgment is appropriate. *Anderson*, 477 U.S. at 247–48 (holding a fact is material when it may significantly affect conclusion of substantive legal analysis); *see* RCFC 56(a); *Aerolineas Argentinas*, 77 F.3d at 1572–73 (quoting *Eastport S. S. Corp.*, 372 F.2d at 1007).

## V.  Conclusion

For the foregoing reasons, the Court: (1) **GRANTS** the government's motion for summary judgment, ECF No. 35; and (2) **DENIES** plaintiff's motion for summary judgment, ECF No. 32. The Clerk is **DIRECTED** to enter judgment accordingly.

---

[1] The language of the USBOP Manual also contemplates a potential negative balance caused by payment over cancellation. USBOP Manual at 97 ("TRUFACS places the inmate account into a negative balance if sufficient funds are unavailable when processing a withdrawal type of payment over cancel. The staff member processing the withdrawal ensures that adequate documentation is available. See Chapter 8.5 for processing negative account balances.").

- 9 -

**IT IS SO ORDERED.**

s/ Ryan T. Holte
RYAN T. HOLTE
Judge
